133    39
144   ⁶297

133    39
146  ⁶473

133    39
f149  ¹161

133    39
f151  ¹517
151   608

### SPENCER v. TERRY'S ESTATE.

1. WILLS—TESTAMENTARY CAPACITY—EVIDENCE.

On a will contest, evidence of testator's mental condition both before and after the time when the will was executed is admissible to show a want of testamentary capacity, notwithstanding all of the testimony of those present at its execution tends strongly to show that testator was then competent.

2. SAME.

On a will contest, the attorney who drew the will was asked on cross-examination, "And you did not suggest to testatrix that she was giving all her household belongings and pictures to the library association?" *Held*, that the question was not improper.

3. SAME—TRIAL—OBJECTIONS TO TESTIMONY.

On further cross-examination the witness was asked, "You state to this jury you allowed her to will her personal belongings to the library association, without saying a word to her?" The question being objected to as argumentative, witness offered to state his reasons for having said nothing; whereupon the court remarked that the question *was* "somewhat argumentative," and that witness had better give his reasons. *Held*, that, no objection having been made that the question improperly suggested that testatrix was under witness' control, and the court having recognized the force of the only objection that was urged, and permitted witness to pursue the course he desired, there was no error.

4. SAME.

An objection to testimony that testatrix was in the habit of using morphine, on the ground that such habit "would have no effect whatever upon the question of mental capacity," did not entitle proponent to urge on appeal that the testimony was improperly admitted because there was no proof that morphine would make one incompetent to make a will, or that testatrix was under its influence at the time the will was executed.

5. SAME—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

An instruction that, if the attorney who drew the will had testified truthfully, the will must stand, was properly modified by adding that the jury should take his testimony, and "all

the testimony in the case which they believed to be credible," and then say whether the attorney had testified truthfully and reliably; there being testimony legitimately tending to show that testatrix was mentally incompetent at the time of the execution of the will.

6. SAME—EXCLUSION OF RELATIVES—NATURAL JUSTICE.

Testatrix was 70 years of age when the will was executed. Her sole heirs consisted of two sisters and a brother, who lived some distance away, and between whom and herself there had been some bitter feeling. *Held*, that the fact that she bequeathed the bulk of her property to a public library had no tendency to show a lack of testamentary capacity, and that it was error to instruct the jury that it might be considered in determining that question in case they should regard such action as contrary to natural justice.

7. SAME—CURING ERROR.

Error in so instructing was not cured by a subsequent instruction that testatrix had the right to dispose of her property as she saw fit, and that it was not in itself an indication of mental incapacity for her to leave the bulk of her property to a charitable or public institution, to the exclusion of her relatives.

8. SAME—SPECIAL QUESTIONS.

Proponent requested the submission to the jury of a special question as to whether, when testatrix handed her lawyer a memorandum of her will, she knew what she was doing. In submitting the question the court said that he supposed it meant, "Was she mentally competent?" *Held*, that, as proponent had no right to submit a question not calling for an answer which would control the main issue, he could not complain of the construction placed upon the question by the court.

Error to Berrien; Coolidge, J. Submitted February 17, 1903. (Docket No. 83.) Decided April 21, 1903.

George F. Sonner presented for probate the last will and testament of Melissa E. Terry, deceased. The will was allowed in the probate court, and Charles A. Spencer and others appealed to the circuit. From a judgment for contestants, proponent brings error. Reversed.

*Cady & Andrews* and *I. W. Riford*, for appellant.
*Gore & Harvey*, for appellees.

CARPENTER, J.  Proponent asks this court to reverse a verdict and judgment denying probate to an instrument purporting to be the last will of Melissa E. Terry, deceased. The material facts are stated in the opinion rendered when this case was before the court on a former occasion.  See *Spencer* v. *Terry's Estate*, 127 Mich. 420 (86 N. W. 998).

While the proponent produced witnesses who were present when the will was made, and whose testimony tended very strongly to prove testamentary capacity at that time, the witnesses produced by contestants testified to observations made before and after said will was made. Many of proponent's objections relate to the admissibility and sufficiency of this testimony of contestants.  Complaint is made that many of contestants' witnesses were permitted to express an opinion adverse to testatrix's testamentary capacity without having testified to facts and circumstances warranting that opinion.  It is sufficient to say that each of those witnesses whose testimony was admitted in evidence against the objection and exception of proponent, under the rule applied by this court in *Prentis* v. *Bates*, 88 Mich. 567, and 93 Mich. 234 (50 N. W. 637, 53 N. W. 153, 17 L. R. A. 494), did testify to facts and circumstances warranting the expression of the opinion complained of.

It is also contended that testatrix's lack of capacity to execute the will on February 17, 1899, could not be established by evidence of her condition before or after that time.  Proponent makes this claim because in the case of *Lange* v. *Wiegand*, 125 Mich. 647 (85 N. W. 109), this court said, speaking of the condition of a testator failing rapidly from a stroke of paralysis, several hours after he had made his will:

"What his condition was at that time could not be weighed against the testimony of witnesses, who stood unimpeached, as to the condition when the will was made."

It was not meant by this expression to cast any doubt upon the rule, settled alike by reason and authority, that testatrix's lack of capacity to execute a will at a particular

time may be proved by her condition before and after that time, if that prior or subsequent condition may be presumed to exist at the time the will was made. See *Harring* v. *Allen*, 25 Mich. 505, and *Haines* v. *Hayden*, 95 Mich. 332 (54 N. W. 911, 35 Am. St. Rep. 566). The quotation relied upon in the opinion in *Lange* v. *Wiegand* was a statement warranted by the facts in that case, and was not intended to apply to another and different case. To apply that principle to this case, it is necessary for proponent's counsel to maintain—and they do maintain—that the facts testified to by Mr. Plummer, who drew the will and witnessed its execution, not only establish the competency of the testatrix to make the will, but that they cannot be discredited by the testimony of witnesses who saw the testatrix before and after that time. We cannot agree with this contention. Contestants' witnesses testify to facts and circumstances, and opinions properly based thereon, which justify the jury in finding that testatrix lacked capacity to make the will in question during a period commencing some time before it was made, and continuing to her death. If it is true that it is a necessary inference from Mr. Plummer's testimony that testatrix possessed testamentary capacity when the will was made, it must be and is true that the jury might discredit that testimony, if they were convinced by the testimony of contestants that she did not possess testamentary capacity at that time. We think, therefore, as above indicated, and as indicated in the former opinion in this case, that there was sufficient evidence of lack of mental capacity to support the verdict in this case.

On the cross-examination of Mr. Plummer, he was asked: "And you did not suggest to her, when you were discussing with her the last clause of that will, that she was giving all her household belongings and pictures to the library association?" Complaint is made that the court did not sustain proponent's objection to this question, that it made no difference "whether he suggested it or not." We think this question was not improper, and that the ruling of the

court was correct.   Mr. Plummer was then asked:   "You state to this jury you allowed her to will her personal belongings—pictures, silver, household treasures—to the library association, without saying a word to her?"   After the witness had answered, "I do," proponent's counsel objected to the question as argumentative.   Witness thereupon said, "If you want to know the reason, I can tell you the reason," and the court thereupon said:   "It *is* somewhat argumentative.   I think we had better have his reasons."   The only objection which we think could properly have been made to this question was that it improperly suggested that testatrix was under the control of the witness, or that he was under an obligation to control her. That objection was not urged when the testimony was admitted, and, the court having recognized the force of the only objection that was urged, and permitted witness to pursue the course he desired, we must hold there was no error.

Complaint is made that the court did not strike from the record the testimony of witnesses to the effect that testatrix was in the habit of using morphine.   The particular testimony referred to related to testatrix's habit in 1891.   The testimony was introduced against proponent's objection that it was too remote from the date of the execution of the will, and that the habit of using morphine "would have no effect whatever upon the question of mental capacity."   It was admitted, notwithstanding this objection, upon the statement of contestants that they were going to show that testatrix continued to use it, and that they had already introduced testimony to that effect. Proponent's counsel, in their brief, urge that the testimony should have been stricken out, because "there was no proof, nor any attempt to prove, that morphine will make a person incompetent to make a will," and because "contestants produced no proof to show testatrix to have been under the influence of morphine at the time she executed the will."   Neither of these objections was made at the time the testimony was introduced, nor, so far as the

court can learn from an examination of the record and briefs, at any time thereafter. We must decline, for these reasons, to determine their validity.

In his charge to the jury the court made a brief statement of the substance of Mr. Plummer's testimony in a manner not complained of by proponent, and then stated:

"Now, gentlemen, if Mr. Plummer, in the statement of facts which I have briefly summed up, has testified truthfully and reliably, then this will must stand. Now, you may take the testimony of Mr. Plummer and Mrs. Gurd, and take all the testimony in the case which you believe to be credible, and then say whether Mr. Plummer has testified truthfully and reliably in the case."

Complaint is made of the last sentence of this charge, as "erroneous, unjust, and uncalled-for." The preceding sentence was in accord with proponent's position in the court below and in this court. Yet it could not possibly be given, under the correct rule, as indicated in this opinion, unless it was coupled with the sentence complained of, or some similar sentence. Under these circumstances it was proper for the court to give the charge complained of.

The court charged the jury at the request of contestants:

"The deceased left surviving her, as next of kin, a brother and two sisters; and if you find that the sixth clause of the will, bequeathing the larger portion of the estate to the public library, is contrary to natural justice, this may be taken into consideration by you in determining the competency of the testatrix to make it."

In the case of *Rivard* v. *Rivard*, 109 Mich. 98 (66 N. W. 681, 63 Am. St. Rep. 566), this court held that it was not error to charge the jury that they "may consider the nature and character of the will, and, if it be contrary to natural justice, this, with the other facts of the case, may be considered by the jury in the determination of the question whether or not the testator was of sound mind." The facts which justified that charge clearly appear in the

opinion of the court, which approves it, and which we quote:

"The testator's daughter Rose was about 12 years of age when her mother died. The evidence for contestants showed that she assumed the mother's place in the household; did most of the work; she and her little sister milked the cows, and brought water from the lake, several hundred feet away; that she was faithful, obedient, and uncomplaining; that her lot was a hard one; that she did work which no father, possessed of the property which her father had, ought to permit a daughter to do. * * * Either from an unfortunate marriage or from other causes, the mind of his daughter Archange had become unbalanced, and after she left her husband her father took her to an asylum for care and treatment. The common sense of mankind condemns, as contrary to natural justice, a will which practically disinherits such children, and leaves the bulk of a large fortune to two who have done no more than they to deserve it, and are better able to meet the vicissitudes and struggles of life; and courts and juries have the right to take that fact into consideration in determining the competency of the testator to make the will."

In *McGinnis* v. *Kempsey*, 27 Mich. 363, it was held that the following charge was not erroneous:

"If a party makes a will contrary to natural justice, this, with other facts, may be considered. But the mere fact that a will is not exactly according to what our own conceptions of justice would be, is not, of itself, sufficient to invalidate a will, for the reason that sane men are known to disagree in this respect. By 'natural justice' we mean that which is founded in equity, in honesty and right. Natural justice requires that the parent shall care for his children. By bringing them into the world, the parent engages to provide for them. Natural justice requires that the child, who has been protected in the weakness of his infancy, should protect and support that parent in the infirmity of his age. There are other relations in the history of every individual out of which obligations grow, but which are so varied, and embrace so wide a range, that human tribunals cannot and do not attempt to enforce them. And wherever the question is presented as to whether a natural obligation has been created, it can

only be by inquiring what honor or conscience dictates. But in determining a case like this—what conscience dictates—we are not to consider alone the fact that this person or that person is a blood relation of the testator. Even under the civil law, where a parent was not allowed to disinherit his child without giving his reasons therefor, —and the law recognized 14 reasons, either one of which was deemed sufficient to absolve the parent from what, without such reason, would be deemed an obligation founded on natural justice,—in short, the conduct of the child towards the parent was to be considered in determining the question as to whether natural justice required the parent to confer any portion of his property upon the child. Did the child refuse to aid the father, and to give him his services, and did he refuse to reverence his authority, natural justice did not require the father to treat the child, in disposing of his property, any different from strangers."

These quotations prove that neither the case of *Rivard* v. *Rivard* nor *McGinnis* v. *Kempsey* is an authority for the giving of the charge now under consideration. It sufficiently appears from these cases that the circumstances must be extraordinary to justify the inference of testamentary incapacity merely because an heir is disinherited. Even when a child was disinherited (and the relation of parent and child is much closer than that between brothers and sisters) this court has never gone further (and that in a very exceptional case) than to say that this circumstance may be considered *with the other facts in the case* in determining testamentary capacity. The charge under consideration contains no such qualification. We think this charge clearly authorized the jury to find lack of testamentary capacity from the fact that testatrix bequeathed the bulk of her property to a public library, to the exclusion of her next of kin, provided they believed such bequest to be contrary to natural justice. It is true that the court gave the following requests of proponent:

"You are instructed that the testatrix had the right to dispose of her property as she saw fit, and it is in itself not

an indication of mental incapacity to leave the bulk of her property to a charitable or public institution, to the partial or total exclusion of her relatives."

"A testatrix may dispose of her property as she pleases, and it is not an indication of mental incapacity that she distributes it partially among her relatives, and leaves the balance to some one else."

The most favorable construction for contestants to be placed on these requests of proponent is to assume that the bequest to the charitable institution, to the exclusion of the next of kin, under no circumstances affords evidence of lack of testamentary capacity. Assuming this construction to be correct, it follows that these instructions, given at the instance of proponent, are inconsistent with the charge under consideration. As the court cannot say which of two inconsistent instructions the jury followed, the giving of proponent's requests would not cure the error, if error there was, in giving the request of contestants under consideration. The fact that testatrix bequeathed the bulk of her property to the public library, rather than to her brother and sisters, afforded no evidence whatever of her lack of testamentary capacity. She was 70 years of age, living in the city of Benton Harbor, Berrien county, Mich. Her two sisters lived in Chicago, Ill., and her brother in Benton, Mich. There had been litigation, which tended to embitter them, and their relations were not intimate at the time the will was made. Testatrix's disregard of their claims was certainly not, under these circumstances, contrary to natural justice, and afforded no evidence of a lack of testamentary capacity.

Proponent submitted to the jury the following special question: "When Mrs. Terry, on February 17, 1899, handed to Mr. Plummer a memorandum of her will, written in her own handwriting, and directed him how to dispose of the balance of her property, did she know what she was doing?" Complaint is made because, in submitting this question to the jury, the court said, "'Did she know what she was doing?' I suppose that means, 'Was

she mentally competent?'" While proponent's counsel had insisted, just before this comment was made, upon their privilege to submit such questions as they desired, they made no objection and took no exception to the remark of the court. Nor do we think that the remark was improper. Proponent had no right to submit a question not calling for an answer which would control the main issue. *Balch* v. *Railroad Co.*, 78 Mich. 654 (44 N. W. 151); *Crane* v. *Reeder*, 25 Mich. 304; *Cousins* v. *Railway Co.*, 96 Mich., at page 389 (56 N. W. 14). Unless their question received the construction placed upon it by the court, it should not have been submitted. They cannot complain, therefore, of that construction.

For the error pointed out, the judgment will be reversed, and a new trial granted.

The other Justices concurred.