## O'DELL v. GOFF.

1. APPEAL AND ERROR—DECISION ON FORMER APPEAL—LAW OF THE CASE.

  A determination on a former review that the testimony warranted the submission of certain questions to the jury will be followed on a subsequent review on a record not materially different from the former one.

2. WILLS — CONTEST — TESTAMENTARY CAPACITY — INSANE DELUSIONS—EVIDENCE—SUFFICIENCY.

  In proceedings to probate a will, contested on the ground that testator's belief in the illegitimacy of his son was an insane delusion, evidence examined, and *held*, that there was evidence from which the jury might infer that his belief was not reached by weighing testimony, but was merely the offspring of his monomania upon the subject of spiritualism, and that the question whether testator's belief was an insane delusion was, therefore, a proper one for the jury.

3. JUDGMENT—FOREIGN JUDGMENT—VALIDITY—COLLATERAL ATTACK — JURISDICTION — EVIDENCE — STATUTES — EXTRATERRITORIAL EFFECT.

  A statute of Indiana making the affidavit of the petitioner in a divorce case prima facie evidence of his bona fide residence necessary to confer jurisdiction upon the courts of that State, merely prescribes a rule of evidence for the courts of Indiana, ineffective here, and does not prevent a showing here that the petitioner was in fact a resident of Michigan, and that the courts of Indiana had no jurisdiction.

4. EVIDENCE—ADMISSIONS—STATEMENTS OF OTHERS—FAILURE TO DENY.

  Failure of the defendant in a divorce case to deny statements contained in a deposition, of the taking of which she had notice, cannot be taken as an admission that such statements were true, where the controversy was being tried by a court of another State which had no jurisdiction because of the nonresidence of the parties.

5. WILLS — CONTEST — TESTAMENTARY CAPACITY — ISSUES — EVIDENCE—REPUTATION—ADMISSIBILITY.

  In proceedings to probate a will, contested on the ground that testator's belief in the illegitimacy of his son was an insane

delusion, the chastity of testator's wife, contestant's mother, was in issue, and evidence of her chaste reputation was admissible.

6. EVIDENCE—REPUTATION—PRESUMPTIONS—EFFECT.
   The issues being such that contestant could not prevail without convincing the jury that his mother was in fact chaste, the fact that there was no evidence of lack of chastity, and that contestant might, if he chose, rely upon the presumption of chastity, affords no ground for ruling that affirmative proof of chastity was inadmissible.

7. APPEAL AND ERROR — EXCEPTIONS — NECESSITY — RULINGS ON EVIDENCE.
   Rulings admitting testimony to which no exceptions were taken cannot be reviewed.

8. SAME—BRIEFS—LIMITING SCOPE OF REVIEW.
   A point made upon the oral argument as to the competency of nonexpert witnesses to express an opinion, not made in the brief nor in the trial court, will not be considered.

9. WILLS—CONTEST—INSANE DELUSIONS—MONOMANIA—EXPLANATIONS—WITNESSES—CREDIBILITY.
   Where, in a will contest, in which one of the issues was whether testator was a monomaniac upon the subject of spiritualism, contestant introduced testimony tending to prove that testator entertained the belief that a departed spirit brought and gave to him a crisp new $5 bill, permission to an expert offered by proponents to explain the circumstance, on the theory that the belief of testator was rational from the standpoint of a spiritualist, was properly denied, where it appeared that the proffered explanation would only have brought into the case a theory of spiritualism which, if believed by the jury, would have justified their discrediting contestant's witnesses who had sworn that testator entertained such belief, that not being a proper test of the credit of the witnesses.

10. TRIAL—INSTRUCTIONS — SUBMISSION TO JURY — HARMLESS ERROR.
    The practice of allowing counsel themselves to read to the jury such of their requests to charge as have been approved by the court, instead of the trial judge himself reading them or making them a part of his general charge, though not approved, furnishes no ground for reversal in a case in which counsel did not object nor except to it.

11. SAME—REFUSAL OF REQUESTS.

The court may in its discretion refuse requests to charge which emphasize the importance of the testimony of a particular witness.

12. WILLS— CONTEST — UNDUE INFLUENCE — INSTRUCTIONS — PROPRIETY.

On the trial of a will contest, an instruction that "No declarations or statements made by testator before or after he made his will can be considered by you as any proof of undue influence, or that he was unduly influenced in making his will," was properly 'refused, since, though the declarations furnished no evidence that others exerted an undue influence, they might afford evidence of the effect of said influence upon his will.

Error to Cass; Coolidge, J., presiding. Submitted June 9, 1908. (Docket No. 52.) Decided July 13, 1908.

B. O'Dell and others presented for probate the last will and testament of John F. Goff, deceased. The will was allowed in the probate court, and Leslie Goff appealed to the circuit court. There was judgment for contestant, and proponents bring error. Affirmed.

*A. Lynn Free* (*Alfred J. Mills*, of counsel), for appellants.

*Smith & Lyle* (*Victor M. Gore*, of counsel), for appellee.

CARPENTER, J. The purpose of this suit is to probate the will of John F. Goff, deceased. That will gave to contestant, Goff's only son and heir, about $1,800, and bequeathed the balance of the estate of about $41,000 to found a home for spiritualistic mediums. This is the second·time the case has been heard in this court. Our first decision will be found reported in 149 Mich. 152 (10 L. R. A. [N. S.] 989). There we set aside a judgment denying probate of the will, and ordered a new trial. The case has again been tried, and again a jury has disallowed the will. The proponents insist that the evidence did not

justify the trial court in submitting to the jury either of the following questions:

(1) Was testator's belief that his son was illegitimate an insane delusion?

(2) Was the will the result of undue influence?

(3) Was testator a monomaniac upon the subject of spiritualism?

We decided on the former hearing that the testimony did warrant the submission to the jury of the second and third of the above questions. We regard that decision as authoritative, for the present record does not differ materially from the former record.

Upon that hearing we also said:

" There is evidence that testator's belief in contestant's illegitimacy which influenced the making of the will was produced by spiritualistic communications."

It would be fair to say that this falls short of deciding that this belief was an insane delusion, and we shall therefore treat the first of the questions raised by proponent as an open one and decide it now. There is no evidence in this case which has any legal tendency to prove testator's son to be illegitimate. Neither is there evidence which has any legal tendency to prove that his mother, Rowena Goff, testator's wife, was unchaste. There is, however, evidence that testator was informed that his wife committed adultery about the time contestant was conceived, and if this were all the testimony on the subject found in this record, we would have no hesitancy in saying that testator's belief that his son was illegitimate was one reached by weighing testimony, and therefore that it was not an insane delusion. But this is not all the testimony contained in the record. There is testimony which tends to prove that many of, if not all, the reports of his wife's infidelity originated in wicked and false slanders invented by testator himself. There was also testimony that before his son was conceived testator became an investigator of spiritualism, and that still later he became a spirit-

ualistic monomaniac, incapable of reasoning where that subject was concerned. It may also be inferred from his acts and his declarations that many times, and particularly about the time the will was made, he received spiritualistic communications informing him that contestant was not his son, and the inference may also be drawn that he had such extraordinary confidence in these communications as to be impelled to follow them blindly and implicitly. From this testimony we think the jury should have been permitted, as they were, to draw the inference that testator gave no credit to the information he received tending to prove his wife's infidelity, and that his belief in his son's illegitimacy was not reached by weighing that testimony, but was merely an offspring of his monomania upon the subject of spiritualism. In short, we think that question 1, above stated, was properly submitted to the jury.

In this connection we will consider certain other objections relating to the subject under consideration. Testator obtained a divorce in the State of Indiana from contestant's mother in the year 1856. The trial court proceeded upon the assumption that the Indiana court was without jurisdiction, and its decree therefore void. Appellant contends that this is erroneous, and that the court had jurisdiction. The jurisdiction of the court is made to rest upon the sworn statement in the bill of complaint, sworn to by testator, that "he is now a resident of the said county and State." It is insisted that effect should be given to this statement because a statute of the State of Indiana makes it evidence that the court possessed jurisdiction. We must hold otherwise. The statute of Indiana prescribed a rule of evidence for the courts of that State. It has no effect in this State. See *Jones* v. *Railway Co.*, 80 Minn. 488 (49 L. R. A. 640). The undisputed evidence in the case proves that at this time testator resided in Michigan. The Indiana court was therefore without jurisdiction, and the contention under consideration is overruled. *People* v. *Dawell*, 25 Mich. 247.

A deposition made by one William P. Bennett and filed in the Indiana case contained what purported to be a copy of a confession of adultery signed by Rowena Goff, contestant's mother. It is urged that, as said Rowena Goff had notice that this deposition was to be taken, her failure to deny the same furnishes evidence that it was true. We think otherwise. The controversy was being tried by a court which possessed no jurisdiction, and she was pursuing a course which she had a lawful right to pursue by paying no attention to the steps that were therein taken. Nothing can be taken against her, therefore, because she did not present her side of the controversy to that court.

Rulings upon the admission and exclusion of testimony. The trial court permitted contestant to introduce testimony tending to prove that Rowena Goff—testator's wife and contestant's mother—bore the reputation of a chaste woman before and during the time she cohabited with testator as his wife. The purpose for which this testimony was introduced was to prove the fact of chastity. Proponents' counsel objected to this testimony. We understand, and the trial court understood, by this objection that it is contended, not that the method adopted to prove chastity was an improper method (as to this see *Harris* v. *Neal*, ante, 57; 3 Wigmore on Evidence, § 1983), but that the fact of chastity was not involved in this suit. We think it was. Contestant could not prevail in his position that testator's belief in his illegitimacy was an insane delusion without convincing the jury that he was in fact his father's son. Involved in this was the question of his mother's chastity. It is true that it would not suffice merely to prove his mother's chastity. He must go further, and prove that testator's belief that his mother lacked chastity was an insane delusion, but nevertheless the fact of chastity was legitimately in issue. To convince the jury that testator's belief of his wife's lack of chastity was an insane delusion, it was necessary to convince them that she was in fact chaste. This does

not mean that contestant must introduce affirmative testimony upon this subject. He might choose to rely upon the presumption of chastity which, in the absence of testimony, would obtain. See *People* v. *Brewer*, 27 Mich. 134; *Greenman* v. *O'Riley*, 144 Mich. 534. But his right to introduce such testimony cannot well be denied. It is also true in this case, as heretofore indicated, that there was no evidence of lack of chastity. This does not, however, afford ground for saying that affirmative proof of chastity was inadmissible. It merely proves that it was unnecessary.

Several witnesses were permitted to express the opinion that testator was a monomaniac. It is contended these witnesses did not testify to facts which entitled them to give their opinions. Most of this testimony came in without any exception, and the rulings admitting that testimony we cannot review. The rulings to which exceptions were taken are not open to the objection under consideration. That testimony came from witnesses who did testify to facts which entitled them to give their opinions under the rule repeatedly approved by this court. The point was made upon the argument that, when the capacity of a testator is assailed upon the ground that he is a monomaniac, the competency of a nonexpert witness to express an opinion is determined by a different rule than that which is applied when his capacity is assailed upon the ground of general incompetency. We do not feel called upon to pass upon this contention because it was not made in the brief. Nor do we think that it was made in the trial court.

Contestant introduced testimony alluded to in our former opinion tending to prove that testator entertained the belief that a departed spirit brought and gave to him a crisp new $5 bill. Proponents complain because an expert witness sworn by them was not permitted to explain this circumstance. They contend that this testimony was admissible as tending to prove that the belief of testator under consideration was rational from the stand-

point of a spiritualist. We are bound to say, from the questions asked, and the colloquy that ensued between counsel and the court, that the excluded testimony would have had no such tendency. It would have only brought into the case a theory of spiritualism which, if believed by the jury, would have justified their discrediting contestant's witnesses who had sworn that testator entertained such belief. We are of the opinion that their credit was not to be tested by that standard, and that the trial court properly excluded the testimony.

Charge and refusal to charge. Each party to this litigation preferred many requests to charge. The learned trial judge marked such of those requests as he thought should be given to the jury, and, instead of himself reading them to the jury or making them a part of his general charge, he directed them to be read, and they were read by the counsel who prepared them. Complaint is made of this practice by proponents' counsel. We are bound to say that the practice is one which should not be resorted to except by consent of counsel or by reason of some exigency not shown to exist in this case. There are a great many reasons why the statement of law which the trial judge gives to the jury for their guidance should proceed directly from him. In that way, and only in that way, can there be any assurance that every principle of law given them for their guidance receives its due emphasis. It may be presumed, however, that in this case there was no impropriety in the practice. Counsel did not object nor except to it. The learned trial judge had a right to suppose that the practice met with their approval, and its adoption furnishes no ground for reversing the judgment.

Proponents' counsel preferred 128 requests to charge. Sixty-four of these requests were given. Complaint is made because of his refusal to give the remaining 64. Most of these requests were covered by the requests that were given or by the general charge of the court. Many of them contained an incorrect statement of law. Many of them were argumentative in nature. Some of them

emphasized the importance of the testimony of particular witnesses. The court had at least a discretion to refuse to give those requests. See *Westchester Fire Ins. Co. v. Earle*, 33 Mich. 144. We think these general remarks sufficiently deal with all the complaints of proponents·under consideration, save that which arises from their complaint of the trial court's refusal to give the following request:

"No declarations or statements made by John F. Goff before or after he made his will can be considered by you as any proof of undue influence, or that he was unduly influenced in making his will."

The vice of this request lies in the concluding language, "or that he was unduly influenced in making his will." It is unquestionably true (see *Zibble* v. *Zibble*, 131 Mich. 655) that the declarations of John F. Goff furnished no evidence that others exerted an undue influence, but those declarations might afford evidence of the effect of said influence upon his will. See, in this connection, *In re Townsend's Estate*, 122 Iowa, 246; *Potter* v. *Baldwin*, 133 Mass. 427. It would therefore have been incorrect to charge the jury that those declarations were no proof "that he was unduly influenced in making his will," and it follows that the request under consideration was properly refused.

Argument of counsel. It is contended that there was prejudicial error in the arguments of contestant's counsel. The statement of which most complaint is made, and the only statement which we think deserves attention, is that relating to the character of Rowena Goff for chastity. It was argued by contestant that her character for chastity was involved in this suit. Proponents contend that that character was not involved. We have already disposed of this question adversely to proponents' contention. Other complaints of the argument do not merit special attention. Some extravagant statements were made, but nothing brought to our attention by proper exceptions discloses reversible error.

A great many other complaints are made, but of these it may be said that they are disposed of adversely to proponents under the reasoning contained in this opinion, or in the former opinion, or that they are answered by elementary principles of law, or by a proper construction of the record. They involve no question of importance to the profession, and disclose no reversible error.

The judgment is affirmed.

GRANT, C. J., and BLAIR, HOOKER, MOORE, and MCALVAY, JJ., concurred.