*In re* THAYER'S ESTATE.

THAYER v. THAYER.

1. APPEAL AND ERROR—UNDUE INFLUENCE—CURING ERROR.
   Any possible prejudice that may have resulted from submitting to a jury the question of undue influence in a will contest, or from admitting evidence upon the subject, was cured by a special finding that decedent was incompetent to execute a valid testamentary disposition of his estate.

2. WILLS—EVIDENCE—INCOMPETENCY.
   Evidence that the testator, whose will was offered for probate, suffered financial reverses, became moody, ceased to attend church and lost his affection for his family, accused his wife of extravagance and left his family without bidding them good-bye, later charging the wife with adultery without grounds therefor, and remaining away from them until his death, that he became possessed with the belief that some of his children were illegitimate and cursed them when they were referred to, *held*, to warrant

the determination of the jury that he was mentally incompetent.[1]

3. SAME—INSANITY—REPUTATION.

The trial court committed no error in admitting testimony that the wife's reputation for chastity was good, in a will contest wherein the contention was made that testator had an insane delusion or belief that she was guilty of infidelity.

4. SAME—REPUTATION—INSANITY.

In corroboration of the wife's denial that she had been unfaithful, the question what her reputation was in the community was not erroneous on the ground that her general reputation was in question.

5. WITNESSES—HUSBAND AND WIFE—PRIVILEGE.

Notwithstanding the privilege created by section 10213, 3 Comp. Laws (5 How Stat. [2d Ed.] § 12857), providing that neither husband nor wife shall, after marriage, be examined as to any communication made by one to the other during the continuance of the marital relation, the widow, in a contest concerning her husband's will, might properly be asked if the testator, who was claimed to have been laboring under an insane delusion that his wife was unfaithful, had ever accused her of infidelity.

Error to Ingham; Collingwood, J. Submitted June 29, 1915. (Docket No. 49.) Decided September 28, 1915.

Edson Thayer presented for probate the will of John Thayer, deceased. It was admitted in probate court and John Arthur Thayer appealed to circuit court. Judgment for contestant. Proponent brings error. Affirmed.

*Person, Shields & Silsbee,* for appellant.

*McArthur & Dunnebacke (Alva M. Cummins,* of counsel), for appellee.

KUHN, J. This litigation arises out of a contest

---

[1] As to insane delusions as affecting capacity to make will, see note in 12 L. R. A. 161, 27 L. R. A. (N. S.) 62.

with reference to what purported to be the last will and testament of John Thayer, deceased. He was born in the State of New York in 1843, and in 1871 was married at Mason, Mich. As a result of this marriage five children were born. One died, and at the time of the trial there were surviving, his widow, Mary Thayer, and four children, Arthur, Frank, Bertha, and Fred. John Thayer had a brother, Edson Thayer, who survived him and was the sole devisee and beneficiary named in his will. John Thayer and his family lived at first on a 90-acre farm, and afterwards on a 40-acre farm, in Ingham county, until 1891, when he went to Dakota to work in harvest time, and with the exception of a short visit home that winter and in 1900 he remained there until 1910, when he returned to Michigan and lived with his brother Edson the remainder of his life. In 1900, while in Dakota, he filed a bill for divorce, and charged on information and belief that his wife committed adultery with one Henry Wrang on the farm in Ingham county. The wife appeared in the suit, filed an answer, and a decree of divorce was awarded her, which provided also that the 40 acres, the homestead in Ingham county, be assigned, transferred, and set over to her. Subsequently she filed a bill against John Thayer and Lafayette Near, who held the paper title to the farm, in the Ingham circuit court in this State, seeking to have the order of the South Dakota court as to the real estate enforced and the 40 acres turned over to her. John Thayer appeared, and the bill was dismissed. In 1907 she filed a bill for divorce in the Ingham circuit court, to which John Thayer filed an answer, but the case does not seem to have been finally disposed of.

The will in question was made on December 28, 1910, at the office of John I. Carpenter, an attorney in the city of Lansing, and at the same time his brother, Edson Thayer, also made a will, naming John Thayer

as his sole beneficiary and devisee. John Thayer's will was duly admitted to probate, and on an appeal to the circuit court by Arthur Thayer, one of his sons, a verdict was rendered in favor of the contestant. Two propositions on the trial were insisted upon by the contestant, viz., that the will was made and executed as the result of undue influence and duress exercised over John Thayer by his brother, Edson A. Thayer, and that at the time of making and signing the will John Thayer was mentally incompetent to make and execute the same. There was submitted to the jury, at the request of counsel for contestant and appellee, the following special question:

"Was the testator, John F. Thayer, at the time of making the will in question, mentally incompetent to make the same, by reason of an insane delusion or delusions, as claimed by the contestant in this case?"

This was answered "Yes" by the jury. There are 134 assignments of error, which in a large measure refer to rulings of the court upon the admission and rejection of testimony.

Counsel for appellant urge strongly that the court was in error in submitting to the jury the question of undue influence, as it is claimed that the record is entirely barren of any competent testimony in support of this claim of the contestant. But in answer thereto it is said that, even if this were conceded, it would be wholly immaterial, as, the jury having found by its answer to the special question which was submitted to it that the testator was mentally incompetent to execute the will in question, the will cannot stand, irrespective of the question of undue influence. While we are not satisfied that it can be said that there was no evidence of undue influence which warranted the submission of that question to the jury, in our opinion, even if there were none, the error committed in submitting the question must be said to have been harm-

less, in view of the special finding of the jury on the question of mental competency.

It is also proponent's claim that there is no competent proof in this record of mental incompetency on the part of the deceased. With this we cannot agree. It is the claim of the contestant, upon this branch of the case, that, when John Thayer and his family left the 90-acre farm and moved on the 40-acre farm because of financial reverses, it marked a complete change in his life. Before that time, it is claimed that he was in all respects a normal man, kind to his children, an habitual attendant at church, and public-spirited. After a short stay on the smaller farm he began to brood, stopped work, stayed away from church, and instead of loving his family began to curse them. He at first began to accuse his wife of extravagance, and in August, 1891, left for Dakota without saying good-bye to any member of the family or telling them how long he was going to stay away. He remained away until Christmas time, and returned on Christmas eve, unannounced, and the family on returning from Christmas exercises found him in the house, at which time he did not kiss or shake hands with any of his children. He left again in March, 1892, without saying good-bye to any of his children, not even bidding farewell to his eldest son, Arthur, who took him to the train.

It appears that while in Dakota he cherished a violent dislike and resentment toward his wife and his children, and in 1900 filed the bill charging his wife with adultery on information and belief. In 1907, in the answer which he filed to the bill filed by his wife in this State, he alleged that "in the spring of 1892, he personally detected her in an act of illicit carnal intercourse and adultery, at their residence, with one Henry Wrang." It is the claim of the contestant that there was absolutely no ground for this charge, and that it was the product of an insane delusion. This it is

claimed is evidenced by the fact that, when the charge is first made in 1900, he claimed knowledge of it on information and belief, and seven years later claims to have personally detected it, and also by the fact that the proofs show that Henry Wrang was not in Aurelius township, where the farm is located, in 1892, and had not been seen by any member of the family for years, and that he also became obsessed with the insane delusion that his youngest boy was illegitimate, and on referring to his children called them vile names. It will be impossible to review the testimony of witnesses who described his conduct during his stay in Dakota, and told about his cursing and swearing and the excitable condition of mind he got into when the names of his wife and family were mentioned. It will be sufficient to say that in our opinion there was abundant testimony to warrant the court in submitting to the jury the claim of contestant that his father was suffering from an insane delusion, and that the will as made was a result thereof.

Many of the assignments of error relate to testimony concerning the question of undue influence, and we are satisfied after reviewing this testimony that any errors committed in the admission or rejection of testimony with relation thereto were harmless, for the reason mentioned above—that the will must necessarily fall because of the determination of the jury of the special question as to mental incompetency.

Assignments of error are based on the method of proving the chastity of the testator's wife, and the competency and materiality of such testimony. To illustrate the character of this proof: The witness Sarah Phillips was asked the following question, after showing that she had known Mary Thayer for 40 years and lived on an adjoining farm:

"*Q.* I want to ask you, Mrs. Phillips, if you know

what her reputation has been for chastity in that community?

"*Mr. Shields:* That is objected to as incompetent and immaterial.

"*The Court:* You may have an exception.

"*A.* It has been the very best. I never heard it questioned in any way."

That such evidence is permissible in a suit of this kind, we think is settled by the decision of this court in *O'Dell* v. *Goff*, 153 Mich. 643 (117 N. W. 59).

It is also contended that the form of the question was improper, as it should have been directed to her "general reputation." We do not think it was necessay to include the word "general" in a question of this kind, as it would not be necessary in case the inquiry related to the general reputation of the witness in other respects. When it is sought to impeach a witness by showing that his general reputation for truth and veracity is bad, the rule contended for applies; but a distinction is made when it is sought to "impeach" a witness and when it is sought to "sustain" one. The distinction is pointed out in *Lenox* v. *Fuller*, 39 Mich. 268, where the court said:

"Where, however, the witness is not called to *impair* but to *support* credit, the ground is different. Not to have been talked about at all in regard to integrity is not to have been talked against, and it is not objectionable to show that the veracity of the witness has not been questioned."

So in the instant case we think it was unobjectionable to show that the chastity of Mrs. Thayer had not been questioned in the neighborhood in which she lived.

Objection is made that the testimony of Mary Thayer should not have been received because of the prohibition contained in section 10213, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12857). The material part

of the section to be considered is contained in the following language:

"Nor shall either, during the marriage, or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage."

The language "as to any communication made by one to the other during marriage" relates only to such communications as were recognized as "confidential communications" at the common law. See *Hagerman* v. *Wigent*, 108 Mich. 192 (65 N. W. 756); *Ward* v. *Oliver*, 129 Mich. 301 (88 N. W. 631). The wife was asked whether the husband had ever accused her of unchastity in any way, and she was allowed to answer "No." This, in our opinion, does not come within the prohibition of the statute, as the testimony was not offered and did not show any communications between the parties, but rather the absence of them. We do not find in the other questions and answers objected to anything that can be said to have been a confidential communication.

By other assignments of error, criticism is made of the charge of the court, of certain answers to hypothetical questions, and conduct of counsel. We have examined them all, but do not find any prejudicial error committed by the trial judge. As we have said, we are of the opinion that there was sufficient evidence to warrant the jury in finding the testator to have been possessed of insane delusions, which affected the testamentary disposition here in question, under the following authorities: *Haines* v. *Hayden*, 95 Mich. 332 (54 N. W. 911, 35 Am. St. Rep. 566); *Rivard* v. *Rivard*, 109 Mich. 98 (66 N. W. 681, 63 Am. St. Rep. 566); *In re Mansbach's Estate*, 150 Mich. 348 (114 N. W. 65); *O'Dell* v. *Goff*, 149 Mich. 152 (112 N. W. 736, 10 L. R. A. [N. S.] 989, 119 Am. St. Rep. 662);

*Id.,* 153 Mich. 643 (117 N. W. 59). The rule is well stated in *Rivard* v. *Rivard, supra:*

"Counsel ignore the other well-settled rule—that, while a man may be possessed of such capacity, he still may be unable to execute the will in question, on account of some delusion which has beclouded or taken away his judgment in regard to those who are the natural objects of his bounty. If a testator disinherits a daughter upon the belief that she is a bad woman, or that she is not his own offspring, or a son upon the belief that he is a drunkard, or his grandchildren upon the belief that his son-in-law has threatened to kill him, and it appears that there is no foundation in fact for any such beliefs, and they are shown to be mere delusions, a will disinheriting such children and grandchildren is void, notwithstanding he was entirely sane upon every other subject, and fully competent to manage his business affairs."

This issue with reference to the mental competency, in our opinion, was submitted to the jury with proper instructions, and, finding no prejudicial error in the record, we affirm the judgment of the court below.

BROOKE, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This is a case which was assigned to the late Justice MCALVAY, remaining undetermined at the time of his death.