ANN REED v. PETER W. REED.

| 52 | 117 |
| 122 | 155 |

*Constitutional law—Credit to extra-territorial judicial proceedings— Indiana divorce—Residence—Laches.*

1. The judicial proceedings to which full faith and credit must be given in every State besides that in which they are taken are those only in which the court was competent to act; and a prima facie showing of their regularity does not save them from impeachment by proper evidence.

2. One who leaves Michigan temporarily to avoid legal process and stays in Indiana a year for the purpose of getting a divorce meanwhile, does not thereby acquire a residence which will give the Indiana courts jurisdiction of his divorce proceedings. And notice of such proceedings, served on the wife in Michigan, need not be heeded.

3. Eighteen years' delay in suing a husband for support where the wife is living apart from him is fatal to the suit, even if the wife originally left him for cause.

Appeal from St. Clair. (Stevens, J.) Oct. 24.—Dec 20.

BILL for support. Defendant appeals. Reversed.

*E. G. Stevenson, John Atkinson* and *Isaac Marston* for

complainant.   A Legislature cannot determine the status of non-residents in respect to marriage : *People v. Dawell* 25 Mich. 247 ; *Hood v. State* 56 Ind. 263 ; *Hoffman v. Hoffman* 46 N. Y. 30 ; *Adams v. Adams* 51 N. H. 388 ; *Sewall v. Sewall* 122 Mass. 156 ; *Pennywit v. Foote* 27 Ohio St. 600 ; *Tolen v. Tolen* 2 Blackf. 411 ; *Kerr v. Kerr* 41 N. Y. 272 ; *Ditson v. Ditson* 4 R. I. 87 ; *Smith v. Smith* 13 Gray 209 ; *Harteau v. Harteau* 14 Pick. 181 ; *Willman v. Willman* 57 Ind. 500 ; Schouler's H. & W. 571 ; *Lyon v. Lyon* 2 Gray 368 ; *Edson v. Edson* 108 Mass. 596 ; Cooley's Const. Lim. 400 ; *Holt v. Alloway* 2 Blackf. 110 ; divorces are invalid that are based on a residence not acquired in good faith : *Hunt v. Hunt* 72 N. Y. 217 ; *Gettys v. Gettys* 3 Lea 260 ; *Prosser v. Warner* 47 Vt. 667 ; *Litowitch v. Litowitch* 19 Kan. 451 ; *Cox v. Cox* 19 Ohio St. 502 ; see also *Hall v. Hall* 25 Wis. 600 ; *Harbaugh v. Cicotte* 33 Mich. 241 ; but an extra-territorial divorce granted to the husband cannot bar the right to support of a wife who has not been within the jurisdiction of the court which granted it : *Wright v. Wright* 24 Mich. 180.

*Frank Whipple, Harris & Vance* and *C. A. Kent* for defendant.

Cooley, J.   Suit in equity to compel the defendant to furnish support to the complainant, who claims to be his wife.   It is instituted under the Act of 1873, which authorizes such a suit when the husband, without good and sufficient cause, shall desert his wife, or, being of sufficient ability to support her, shall refuse or neglect to properly provide for and suitably maintain her.   1 Sess. L., 1873, p. 203.   [How. St. § 6291.]

Most of the material facts in the case are not in dispute. The parties were married in Canada in the year 1850.   The defendant was by trade a currier, and neither he nor his wife had property.   He worked at his trade three or four years, and then began privately to read medical books.   In 1857 he went to Terre Haute, Indiana, where he held him-

self out as a physician for about a year, but meeting with little success, went back to Canada, locating at a place called Madoc. In 1861 he moved to Port Huron in this State, and there the parties lived together as husband and wife until December, 1861, when complainant separated from her husband, and they have not lived together since. Three children, two boys and a girl, had been born to the parties, and the mother took the girl when she left. The father provided for the separate board of the boys for a time, but in the course of the next year they went to their mother, and remained with her until they came of age. The daughter has always lived with her mother, and for more than ten years has been blind and helpless. One of the sons is dead ; the other is married and has a family. Defendant contributed to the support of his wife and children for three or four years after separation, but the parties disagree as to the extent of the aid furnished. In the fall of 1865 defendant went to Cincinnati where he took a course of medical lectures.

The immediate occasion for complainant leaving defendant was a charge she brought against him of adultery with one Mrs. Woodcock. In the summer of 1864 she filed a bill for a divorce on this ground, and proceedings were had in the case for two years or so, but it never was brought to a hearing. In January, 1867, defendant filed a bill against his wife for a divorce on the ground of desertion. Meantime complainant had another ground of complaint against him, for alleged improper intimacy with a Mrs. Jones. When he filed his bill for divorce, complainant immediately took steps to have him arrested for failure to support his family, and this coming to his knowledge, he secretly left Port Huron, going first to Canada, then to Toledo and from there to Terre Haute, where he again offered his services to the public as a physician.

It appears by the testimony on both sides that defendant had had no thought of changing his residence up to the time of his leaving Port Huron, and that when he left the sole purpose was to avoid the service of process. He took

pains that a knowledge of his whereabouts should not come to his wife, and he had goods which were sent to him from Port Huron billed to Toledo and from there reshipped that the direction at Port Huron might not disclose his place of stay. After reaching Terre Haute he was advised that if he would stay there a year he could get a divorce, and he therefore remained until the year was up and then filed his bill. In the mean time, however, he had had a friend approach his wife to ascertain if their controversies could be settled so that he could go back in peace, but his overtures were unsuccessful.

The cause assigned for divorce in the Indiana bill was desertion. Summons upon this bill was issued February 25, 1868, and returned non est the same day. Two weeks later a notice was filed with the clerk of the Indiana court that the plaintiff in that cause would take the testimony of witnesses at a law office specified in Port Huron on April 2, 1868, between the hours of eight in the morning and six in the afternoon. Pursuant to this notice, which it is manifest it was not intended the party concerned would ever see, the testimony of the plaintiff's legal adviser at Port Huron was taken, and this so completely made out the plaintiff's case that, as he ingenuously informs us, his Terre Haute counsel told him it was strong enough " to divorce half the women in Indiana." Probably by this was meant that by a like secret process a case could be made out against half the married couples in any community ; and very likely that would be true. On filing this testimony and proving in open court that he had his residence in Terre Haute, the plaintiff was awarded his divorce. The proof of residence was made by some woman he had seen at a boarding-house, but with whom he professed to have only a casual acquaintance. The decree purporting to grant a divorce bears date April 28, 1868. The wife had no notice or knowledge of the Indiana proceedings until after their conclusion, and the only public notice which was given was published in a Terre Haute newspaper for three weeks, commencing February 26, 1868.

In a little over two months from the time he procured his Indiana divorce this defendant was practicing medicine as a resident of Port Huron again, and nineteen days after his arrival in that city he had gone through the ceremony of marriage with Mrs. Jones, though if his evidence is true no communication whatever had passed between him and her from the time of his clandestine departure from Port Huron until his return. After returning he gave no aid to complainant or to their blind and helpless daughter. The present suit was begun November 29, 1881, and the decree made in it awards to complainant an annual allowance of three hundred and sixty-five dollars. The sum named is sufficiently moderate if under the circumstances any sum at all should be awarded.

The defendant appeals, and relies for a reversal of the decree upon the proposition that at the time the suit was instituted the complainant was not his wife; the marriage bonds between them having been dissolved by the Indiana divorce. "Full faith and credit," it is said, is required to be given to the record of this divorce by the express provision of the Federal Constitution [Art. iv. § 1]; and it is not competent in a collateral proceeding to assail it.

It is true that the Constitution of the United States requires full faith and credit to be given in every state to the records and judicial proceedings of other states; but this requirement does not extend to the giving validity to those proceedings which in themselves are mere nullities. It is implied in judicial proceedings that the court assuming to act and to render judgment should have had competent authority to do so in the particular case; and when this authority is wanting, whatever is done is not judicial. It cannot, therefore, be within the protection of the Federal Constitution. And if the record by its recitals makes a prima facie case of jurisdiction, no one in another state or country is concluded thereby, but he may show what the real fact was, and thus disprove the authority for making such a record. *Thompson v. Whitman* 18 Wall. 457; *Knowles v.*

*Gas-light Co.* 19 Wall. 58 ; *Bartlet v. Knight* 1 Mass. 401;
s. c. 2 Am. Dec. 36; *Shumway v. Stillman* 4 Cow. 292 ;
s. c. 15 Am. Dec. 374; *Thompson v. Emmert* 15 Ill. 416 ;
*Marx v. Fore* 51 Mo. 69; s. c. 11 Am. Rep. 432 ; *People
v. Dawell* 25 Mich. 247; s. c. 12 Am. Rep. 260; *Reel v.
Elder* 62 Penn. St. 308 ; s. c. 1 Am. Rep. 414; *Pennywit
v. Foote* 27 Ohio St. 600; s. c. 22 Am. Rep. 340; *Gilman
v. Gilman* 126 Mass 26; s. c. 30 Am. Rep. 646; *Bowler
v. Huston* 30 Grat. 266; s. c. 32 Am. Rep. 673; *Eaton v.
Hasty* 6 Neb. 419; s. c. 29 Am. Rep. 365.

It may be assumed that the record of the Indiana court
imported a case of jurisdiction ; but this was because the
defendant in this case imposed upon the court by a false
assertion of residence, and induced it by that assertion to
make orders and finally to enter a decree which it would
not have made or entered had the facts been known. That
court could have no authority to dissolve the bonds of mat-
rimony between citizens of Michigan ; for the subject is
one to which the laws of Indiana could not possibly extend,
and do not assume to extend. The laws of that state author-
ize certain of its courts to grant divorces for specified
causes on the application of actual residents of the state ;
but a person is not such a resident who is in the state merely
for the purposes of the divorce, as it is manifest that this
defendant was during his last sojourn in Terre Haute. He
left Port Huron not because of any purpose to abandon his
residence there, but to avoid the service of process, and he
remained in Terre Haute after reaching there because he
was told that after a year's stay he might obtain a divorce.
The proceedings in the Indiana court we need not comment
upon further than to remark that when it is known that
knowledge of them was kept from this complainant, though
the pretense of giving notice was publicly made, and that
the evidence was secretly taken in Port Huron where it was
known complainant had remained, it becomes at once appar-
ent that the decree which the court was deceived into mak-
ing, was a mere travesty of justice. Had notice of the suit
been given to the wife in Michigan, she would have been

under no obligation to give heed to it: *Scott v. Noble* 72 Penn. St. 115; *Pennoyer v. Neff* 95 U. S. 714; but the notice might have been some indication of a willingness to allow her to defend her rights; while the course actually taken conclusively shows that it was never intended she should have the day in court which belongs to every one of common right, and which every civilized state assures to its people.

A more difficult objection for the complainant to overcome is that which arises upon the long delay to make claim to support. The Indiana divorce, it is seen, was obtained in 1868; this suit was instituted in 1881. Here is delay and apparent acquiescence in the fraudulent proceedings for thirteen years, and the bill assigns no reason for this whatever. But even this does not fully present the laches with which complainant is chargeable. It appeared from the charges and counter-charges that she withdrew from her husband in 1863, eighteen years before this bill was filed, and that her remaining apart from him after that time was against his will and in disregard of his repeated requests that she would return to him. A suit for support under such circumstances necessarily brings in question the justification for the original separation, and would require an investigation into the facts attending it. It could not be expected that an investigation after such a lapse of time could be anything else than imperfect, uncertain and unsatisfactory, and the laches has been so gross that the court may well refuse to enter upon it. What is said in *Compo v. Iron Mining Co.* 50 Mich. 578, 595, is entirely applicable to this case; and the following cases, in which relief was refused for long delay in cases of matrimonial offenses, may be considered even more directly in point: *Guest v. Shipley* 2 Hagg. 321; *Matthews v. Matthews* 1 Sw. & Trist. 500; *Same v. Same* 3 Sw. & Trist. 161; *Williamson v. Williamson* 1 Johns. Ch. 488; *Valleau v. Valleau* 6 Paige 207; *Fellows v. Fellows* 8 N. H. 160; *Whittington v. Whittington* 2 Dev. & Bat. 64; *Rawdon v. Rawdon* 28 Ala. 565; *Castleden v. Castleden* 9 H. L. Cas. 186; *Peipho v. Peipho* 88 Ill. 438.

The conclusion must be that the decree must be reversed and the bill dismissed.

GRAVES, C. J. and SHERWOOD, J. concurred.

CAMPBELL, J.   I concur in so much of the opinion as reverses for laches.