## HEDVIG A. COLBY v. CHRISTIAN M. COLBY.[1]

June 2, 1896.

Nos. 9938—(104).

**Divorce—Action to Set Aside—Fraud.**

In an action under G. S. 1894, § 5434, to set aside a judgment of divorce on the ground that it was procured by fraud, *held*, the findings of fact are supported by the evidence.

**Exception—Misleading Court.**

Rule applied that, where counsel, by his statements, misleads the court, he must set himself and the court right before an exception will lie.

**Divorce—Action to Set Aside—Annulling Judgment.**

The divorce action was fraudulent from its inception. *Held*, the judgment in that action should, by the judgment in this action, be simply annulled, which would have the effect of wiping out or abating that action from its inception, and it was error to go further, and order judgment in this action, permitting this plaintiff to answer in that action, "and defend the same in all respects as if said judgment had never been entered."

Appeal by defendant from an order of the district court for Hennepin county, Elliott, J., denying a new trial. Modified.

*Adams & Southworth,* for appellant.

*Arctander & Arctander,* for respondent.

CANTY, J. The nature of this action will appear from the opinion filed on the former appeal, which was from an order overruling

[1] Reported in 67 N. W. 663.

a demurrer to the complaint. See 59 Minn. 432, 61 N. W. 460. The case has since been tried by the court without a jury, and judgment was ordered for plaintiff. From an order denying a new trial, defendant again appeals.

Plaintiff and defendant were married in Denmark in August, 1879, and lived together as husband and wife until May 4, 1892, at which date they resided in this state. On the trial the court made the following findings of fact:

"(2) That on or about the 4th day of May, 1892, the plaintiff left the United States, and went to the kingdom of Denmark, and did not return to the state of Minnesota until a few days before the commencement of this action. (3) That, for the purpose and with the intent of fraudulently procuring a divorce from her, and of preventing her from defending against said action for divorce, the defendant persuaded the plaintiff to go to Denmark, to remain for a time for the benefit of her health, and on the 4th day of May, 1892, sent her abroad as stated above. (4) That, as a part of the same fraudulent scheme, and for the purpose of preventing her from returning to the state, and defending the contemplated action for divorce, the defendant failed to furnish the plaintiff with funds sufficient to enable her to live in Denmark or to return to Minnesota, and that she was left by the defendant in Copenhagen, Denmark, dependent upon her relatives for means of support. (5) That, after the plaintiff had left the state of Minnesota, the defendant began a suit for divorce from this plaintiff in this court on the sole ground of impotency; that said suit was commenced on the 17th day of September, 1892, while the plaintiff herein was in Denmark, and the papers were served upon the defendant in this suit, the plaintiff herein, in Copenhagen, Denmark, on the 6th day of October, 1892. (6) That the defendant herein caused to be attached to the copy of the summons and complaint in said divorce suit a paper, signed by the plaintiff in said suit, of which the following is a true copy: 'In case the divorce being granted me in this action, I agree to pay and allow the defendant, Hedvig A. Colby, the sum of $25 per month so long as she may need the same or remain single. C. M. Colby.' That no such paper was attached to the original summons and complaint, and the same was not called to the attention of the court at the time of hearing the divorce suit as herein set forth, and no provision was ever made for alimony or support for Hedvig A. Colby; and that, after the granting of said divorce, the said Christian M. Colby refused to comply with the agreement contained in said paper, and informed the said Hedvig A. Colby that he could not be compelled to pay her any money. (7) That the paper above referred to was attached to and made a part of the copy of papers served on the plaintiff herein, for the fraudulent purpose of inducing her to believe that such alimony would be made her by the court; and that she did so believe. (8) That, at the time of the service of the papers on the plaintiff herein, the said Hedvig A.

Colby was not acquainted with the meaning of the word 'impotent'; that, a day or two before the service of said papers upon her, the said Christian M. Colby fraudulently represented to her, by a letter written and sent to her, and duly received, that the ground on which he sought divorce was barrenness, and then informed her that it meant incapacity to bear children; that said letter was written and sent to said Hedvig A. Colby, with the fraudulent intent of misleading her, and inducing her to believe that he intended to secure a divorce from her because of the fact that she was barren, and had borne him no children, and that she then understood and believed that such was the ground on which the divorce was asked, and that it was a ground for divorce under the laws of Minnesota. (9) That said Hedvig A. Colby had but a moderate acquaintance with the English language, and was totally unacquainted with the meaning of legal and medical terms, and was, when said papers were served upon her, in a foreign city, with no friends who could explain the same to her. (10) That, at the time when plaintiff was sent to Denmark, she was in poor health, and spent a great part of the time, while she was in Denmark, in the hospital, on expense, for the payment of which defendant did not supply her with sufficient money, and at the time of the service of the papers upon her she was without money. (11) That on November 19, 1892, the defendant in said divorce suit being then in default for want of answer, the said Christian M. Colby appeared before this court, the Hon. Charles M. Pond presiding, and, after being duly sworn, testified that the defendant, Hedvig A. Colby, was, and ever since said marriage had been, impotent, and incapacitated for sexual intercourse, by reason of physical defects and deformities of her genital organs; that said testimony was wholly false, and was then known to be false by the witness; that thereupon, after hearing other corroborative evidence, this court, on said 19th day of November, 1892, ordered judgment divorcing the said parties, which judgment was entered on said day; * * * that said judgment was obtained by perjury, and false and fraudulent practices hereinbefore referred to. (12) That the failure of the plaintiff herein to defend the divorce suit was due to the fraudulent action of defendant, as herein stated, whereby she was led to believe that barrenness was a ground for divorce, and the failure of defendant to supply her with money under the circumstances, whereby she was left in destitute condition."

It is contended by appellant that, so far as these findings impute to him any fraudulent intent, act, or artifice in procuring the divorce, they are not supported by the evidence. We are of the opinion that they are amply supported by the evidence. We cannot attempt to recite all the facts, earmarks, and circumstances given in evidence, from which, in our opinion, the trial court was fully justified in finding that this defendant planned a deliberate scheme to

send his wife away to Denmark, and get rid of her after she was gone, by procuring a divorce from her.

But a serious question in this case is whether it does not conclusively appear, from the evidence, that this plaintiff is guilty of such laches as to bar her action for equitable relief, in having delayed for one year and seven months after the divorce suit was commenced, and until after he had remarried, before commencing this action to set aside the judgment of divorce. The thirteenth finding of the court is as follows: "(13) That the plaintiff commenced this action within a reasonable time after knowledge of the facts, and as soon as she was able to secure the necessary money to reach the state of Minnesota, and is not guilty of laches." After a careful consideration of all the evidence, we are unable to say that it will not support the finding.

The evidence offered by plaintiff tends to prove that, when she departed from this state, she had transportation to Hamburg, Germany, and $50 in money, which he furnished her; that out of this $50 she was obliged to pay incidental expenses on the trip, pay her fare from Hamburg to Copenhagen, Denmark, and buy clothes at each of those places, as he advised her not to buy sufficient clothing before she started, but to buy it in Europe, where it was cheaper; that from May to November, while she was in Europe, he sent her $75; that she was sick some time before she started, and he pretended to send her to Denmark for treatment; that, while she was there, she was in the hospital a part of the time, at considerable expense; that, when the papers in the divorce case were served on her, on October 6, 1892, she had but $2, was sick and unable to travel for some time afterward, and that, while she was in Europe, he sent her no money after that date; that her father, who lived in Denmark, was a poor man, having no property or means of support, except an annuity of $25 per month, on which he supported himself and his family, and was unable to help her, but that finally he succeeded in borrowing for her $100, on which she started, on November 8, to return to Minnesota, for the purpose of opposing the granting of a divorce; that she was sick on the way and arrived in Chicago sick, with only $2 left, was sick at the hotel 9 or 10 days, was obliged to pawn some of her clothes at the hotel to pay for board and medicine; and that, after she got well, she went to work in the hotel to

earn means of support.    In December he sent her $25 from Minneapolis, which she used to redeem her clothes and pay her physician's bills.    This was all the money or means he furnished her, and, except as aforesaid, she had no means of support from the time she left Minneapolis, in May, 1892, until she returned, in March, 1894, except what she earned in Chicago from December, 1892, to March, 1894, working as a servant in the hotel and in private families.    She testified: "Every time I saved a little money, I had to spend it all for doctors.    I was quite worn out.    *    *    *    Of course, I could not go to Minneapolis without a cent.    I had to wait there to save $30.    That is all the money I had when I got here."    When she arrived in Chicago, she wrote her husband, inquiring about the status of the divorce case, and on November 30, 1892, he answered her, stating that the divorce had been granted about a week before.    He also advised her, at this and other times, not to come to Minneapolis, and made various threats as to what the consequences would be if she did.    Some time afterwards she wrote her present attorneys as to the case, "but got no satisfaction," and first learned, on arriving in Minneapolis, that the divorce was obtained not merely on the ground of her barrenness, but on the ground of her alleged impotency.

This is about the strongest marshaling of facts in her favor that can be made from the record.    From the fact that she remained in Chicago some 15 months, together with other facts and circumstances in the case, the court might have found that she did not desire to come to Minneapolis, or live there after her husband had procured a divorce from her, and that she had in fact abandoned any effort or intent to have the judgment of divorce set aside, until she found that he had remarried, and had no intention of paying her the $25 per month which he had promised her.    But the evidence tending to prove these things is by no means conclusive, and, on the whole, we are unable to say that the finding acquitting her of laches is not supported by the evidence.

2. On the cross-examination of the plaintiff, the following proceedings took place: "Q. At that time, Mrs. Colby, did you not say to Mr. Merritt that you did not care what the outcome of this action was, that all you wanted was revenge?    (Objected to by the plaintiff as irrelevant and immaterial.)    Mr. Adams:    We propose to lay an impeaching foundation to show that she is not acting in good

faith in this action. The Court: I don't think that is a proper impeaching question. You can prove that fact without asking that question. She has not testified to the contrary of it. (Objection sustained. Defendant excepts.)" This is assigned as error. It seems to us that this question was proper cross-examination, bearing directly on the motives of the plaintiff in bringing this suit after so long a delay. But defendant's counsel, by his own statement, misled the judge, and led him into the error of assuming that it was wholly immaterial, except to impeach the witness, by contradicting her, when she had not testified to the contrary. Even though counsel was not wholly to blame for the error of the court, he was partly so,—sufficiently so that he should have set himself right, and attempted to set the court right, before resting on his exception, which for this reason we hold was not well taken.

3. The court ordered judgment, not only that the judgment in the divorce suit be annulled and canceled, but also that this plaintiff be permitted "to interpose an answer in said suit and defend the same in all respects as if said judgment had never been entered." This is assigned as error. Where the vice in the action at law was in the trial or in being prevented from moving for a new trial, equity, under the old practice, sometimes granted relief in a bill for a new trial. See 2 Story, Eq. Jur. §§ 895, 896. But, even in such a case, it has been held that the new trial must be had by framing issues for the jury in the equity suit, and not by ordering a new trial in the original action at law. Knifong v. Hendricks, 2 Gratt. 212. However, in the case at bar, the vice is not in the trial, or anything subsequent to the trial, but in the inception of the action. In such a case, in an action under G. S. 1894, § 5434, a new trial should not ordinarily be granted or awarded,—at least, unless asked for by the opposite party,—but the judgment should simply be annulled, which amounts to wiping out or abating the original action from its inception. For this reason, the order for judgment must be modified by striking out the second division thereof, from which the above quotation is taken.

These are all the questions raised worthy of consideration. It is ordered that the order for judgment be modified as above specified, and, thereupon, the order denying a new trial be affirmed.