# HARRIET T. SAMMONS v. KATE J. PIKE and Another.[1]

## March 26, 1909.

## Nos. 15,968, 15,969—(237, 238)[2]

### Divorce—Collateral Attack in Foreign Court.

One Higbie, at all times involved a resident of Minnesota, initiated in 1886 a divorce proceeding in Dakota against his wife, who lived in New York. She answered. He dismissed the action. In 1887 he brought another suit in Nebraska. She answered, and set up a cross-bill for a divorce on her part. While this action was pending, and in 1888, he began a third divorce proceeding in Dakota. Fraud in service of summons was claimed and denied. The wife did not appear. Decree for absolute divorce was granted in 1889. Neither party remarried. The wife had actual knowledge of the existence of the decree for some seven years before her death. The husband died in 1905. The wife died in 1906. In an action of ejectment, brought later in 1906 by persons claiming under her to recover possession of the homestead and other property from persons claiming under him, it is *held* that a decree of divorce may be impeached collaterally in the courts of another state by proving that the court granting it had no jurisdiction because of the plaintiff's want of domicile, even where the record purports to show such jurisdiction.

### Divorce—Estoppel against Victim of Fraud.

Where a decree of divorce by a court within the jurisdiction of which the person seeking a divorce was a resident at the time involved is voidable only because of fraud in connection with the service of the summons or in the conduct of the case, the victim of the fraud may by unexplained delay, lasting until after the death of the perpetrator of the fraud, or by other conduct operating by way of waiver or estoppel, be prevented from successfully asserting a right to a distributive share of the estate of the original wrongdoer.

### Quære.

Whether under any circumstances of aggravation a decree of divorce entered by a court of a state, of which neither plaintiff nor defendant were residents at any time, could be validated by any subsequent conduct—quære.

### Heirs of Wife Not Estopped by Her Conduct.

The failure of the wife in this case to attack the invalid decree, and her other conduct complained of, did not operate to prevent persons claiming

[1]Reported in 120 N. W. 540; 122 N. W. 168.   [2]October, 1908, term calendar.

under her from securing her distributive share in his estate as the law determined it to be.

Two actions in the district court for Steele county by the executrix of the estate of Anna Leslie Higbie, deceased, to recover possession of certain real estate and for the value of the use thereof. The real estate had been the property of Delos Higbie, deceased, who had secured a divorce in Hand county, Dakota territory, from Anna Leslie Higbie and had devised the real estate to the defendant Kate J. Pike. The cases were tried before Buckham, J., who found that the decree of divorce was void and that Anna Leslie Higbie, as the widow of Delos Higbie, inherited an undivided third of his real estate to the alienation of which she had not consented. Affirmed.

*L. W. Collins, W. A. Sperry* and *Wm. H. Hallam,* for appellants.

No one should be allowed to gamble on the deterioration of evidence, the altered situation of the parties or the effect of time on values and accumulations. Whenever a divorce is spread upon the records by fraud, it is the duty of the defendant to act promptly upon the discovery of the fraud. Nothing in the law is better established. Earle v. Earle, 91 Ind. 27; Hurley v. Hurley, 117 Iowa, 621; Nicholson v. Nicholson, 113 Ind. 131; Evans v. Woodsworth, 213 Ill. 404. "If there has been unreasonable delay in seeking its vacation, that is sufficient to bar relief however fraudulent the divorce was." Maher v. Title G. & T. Co., 95 Ill. App. 365.

A divorce may be void because rendered in a state where neither of the parties resides, but this does not prevent the concurrence of the parties so that they are bound, even though the state is not bound and can punish for bigamy. In re Ellis' Estate, 55 Minn. 401; Colby v. Colby, 65 Minn. 549. An unexcused delay of nine years and until after the death of the other party, in attacking a decree of divorce, is fatal to a proceeding to set it aside for the purpose of obtaining an interest in the decedent's estate. Zoellner v. Zoellner, 46 Mich. 511; McNeil v. McNeil, 78 Fed. 834; Marvin v. Foster, 61 Minn. 154. This attempt to rehabilitate the Higbie family after the death of both parties and after a separation of twenty-five years, comes of a strictly mercenary motive.

On reargument: In the opinion the court say: In none of the authorities cited "were both the parties nonresidents of the state, the court of which granted the divorce." In the Ellis case both plaintiff and defendant were residents of Minnesota. In the case at bar the fraud was perpetrated by one of the parties, in the Ellis case by both. In the latter case, this court held that there was nothing to prevent acquiescence or concurrence in that decree and yet it was obtained by fraud upon the Wisconsin court when both parties resided in Minnesota. According to the decision in this case Mrs. Higbie was married or unmarried as she elected. If she desired to again marry or to convey real property she was divorced. If she wanted to compel Higbie to support her or if she desired to share in his property on his death, she was his wife. Is there not something strikingly incongruous and demonstrably wrong in the proposition that she was a divorced woman if she wanted to be and a wife if she so chose? Few women are so favored.

*Leach & Reigard,* and *J. A.* and *A. W. Sawyer,* for respondent.

In most of the cases cited by counsel, the judgment of divorce attacked was voidable and not void. Fraud in itself does not affect the jurisdiction, but when jurisdiction is present and there is fraud, the blameless party must move within a short time. The Ellis case lends no support to defendant's claim, but is a wall of support in respondent's favor.

JAGGARD, J.

Plaintiff, claiming under Mrs. Higbie, deceased, brought ejectment in the latter part of 1906 to recover possession of a homestead and other lands in this state from defendant Pike, claiming under the will of Mr. Higbie, also deceased, and against other defendants in possession as her tenant. Mr. and Mrs. Higbie were married in New York in 1864, and shortly afterwards removed to Owatonna, Minnesota. Mr. Higbie resided there until his death, January 5, 1905. Mrs. Higbie came to Minnesota with her husband, but lived apart from him between October, 1877, and April, 1880, when she returned and lived with him until November 3, 1883, when she finally left him, and lived in New Jersey and New York, where she died in 1906. In 1886 Mr. Higbie initiated divorce proceedings in

Dakota against Mrs. Higbie on the ground of desertion. Mrs. Higbie answered. Mr. Higbie dismissed the action. In 1887 Mr. Higbie began another divorce suit in Nebraska on the ground of desertion. Mrs. Higbie answered, and set up a cross-bill for divorce on her part. Mr. Higbie sought to dismiss the case on the ground that he had become a resident of Minnesota. His motion the court denied. In 1888 Mr. Higbie's bill for divorce was dismissed, but the action was retained on the cross-bill. In September, 1890, it was stricken from the docket on motion of Mr. Higbie. In June, 1888, while the Nebraska action was still pending, and while he was a still a resident of this state, he swore to a complaint for divorce from Mrs. Higbie on the ground of desertion, and in July filed it in Hand county, Dakota territory, which is now in South Dakota. Later he made affidavit in which he stated he was a resident of Minnesota. Summons was served on Mrs. Higbie by publication. A copy was mailed to Mrs. Higbie by registered letter. Some one satisfied the postal authorities and received it. Plaintiff insists, and the trial court found, that the letter was sent to a place at which Mrs. Higbie did not reside, and that the service of summons was void for fraud. Defendant challenges the sufficiency of the evidence. The wife did not appear. The Dakota court entered a decree granting an absolute divorce in 1889. According to defendant upon the record it appears that Mrs. Higbie had no cause for desertion or divorce, that plaintiff had full knowledge of the decree of divorce rendered in the Dakota court for seven years, and that she is barred by her "acquiescence * * * trickery, artifice, cunning, and bad faith." The trial court found that Mr. Higbie was, at the time of the Dakota divorce proceedings and at all times here involved, a resident of Minnesota. It granted plaintiff judgment. Some aspects of this case were before this court in Sammons v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265. The present appeal involves two questions not there considered.

Of these the first is whether the decree of the Dakota court was subject to collateral attack under the circumstances of this case. The rule is settled beyond peradventure that "a decree of divorce may be impeached collaterally in the courts of another state by proof that the court granting it had no jurisdiction 'because of the plain-

tiff's want of domicile,' even when the record purports to show such jurisdiction. * * *" German S. & L. Society v. Dormitzer, 192 U. S. 125, 24 Sup. Ct. 221, 48 L. Ed. 373. How universally this view of the law has been accepted will appear in cases collected in Succession of Benton (La.) 59 L. R. A. 135, 183. It is unquestionably the law in this state. Thelen v. Thelen, 75 Minn. 433, 78 N. W. 108. And see Pollock v. Pollock, 9 S. D. 48, 68 N. W. 176; Smith v. Smith, 7 N. D. 404, 75 N. W. 783. No well-considered decision, as distinguished from a dictum to the contrary, has been called to our attention.

The second question is whether the divorce decree should be given legal effect, because of Mrs. Higbie's conduct subsequent to it. That decree plaintiff insists was clearly void because, first, of fraud in the service of the summons; and, second, of the nonresidence in Dakota of both the plaintiff and defendant. In the view of the case we take, the second of these reasons only need be considered. It is decisive of the issues. Defendant places emphasis upon the fact that neither the cause of morality nor interest of the public is involved, since both parties are dead, and that this is a controversy about property interests only, to which principles peculiar to divorce proceedings should not be applied. They insist that the decree was voidable only, and that under the circumstances presented by this record it must stand.

None of the many authorities to which they have directed our attention justify this conclusion in letter or in spirit. In none of them were both the parties nonresidents of the state, the court of which granted the divorce. In all but one of them, after a summons had been duly served, and after proper proof had been adduced, and after all the required subsequent proceedings had been lawfully observed, a valid decree could have been entered. The proposition in which they fairly result is: Where a decree of divorce by a court within the jurisdiction of which the person seeking a divorce was a resident at the times involved is voidable only because of fraud in connection with the service of the summons or the conduct of the case, the victim of the fraud by unexplained delay lasting until after the death of the perpetrator of the fraud, or by other conduct operating as a waiver or estoppel, may be prevented from

successfully asserting a right to a distributive share of the estate of the original wrongdoer.

Thus, in the leading case on the subject, Zoellner v. Zoellner, 46 Mich. 511, 9 N. W. 831, nine years' unexcused delay, during which the plaintiff in the divorce proceeding had died, was held sufficient to validate the divorce, although the publication of the summons was secured by fraud and constituted an imposition on the court. In that case, however, the defendant lived in Ohio; but no question was raised that plaintiff lived in Michigan. If the defendant had appeared in the proceeding, a valid decree might have been entered. Defendant might have waived an improper service of summons by appearance. It was consonant with equity that her conduct subsequent to the decree constituted a waiver.

In none of the cases to which defendant has referred us, and we have examined them all, did it appear that the plaintiff was not a resident of the state in which the court granted the divorce. Some of them were cases of fraud in connection with the service of summons. Zoellner v. Zoellner, supra; Earle v. Earle, 91 Ind. 27; Everett v. Everett, 60 Wis. 200, 18 N. W. 637; Prewett v. Dyer, 107 Cal. 154, 40 Pac. 105; Evans v. Woodsworth, 213 Ill. 404, 72 N. E. 1082; Marvin v. Foster, 61 Minn. 154, 63 N. W. 484, 52 Am. St. 586. Indeed, in Maher v. Title G. & T. Co., 95 Ill. App. 365, there was "colorable jurisdiction." At page 373, the court said: "The decree was not void for lack of jurisdiction of appellant's person, nor because of a want of power" on part of the court to entertain an application for divorce and to proceed to a decree. The proceedings of the court were at the most erroneous. In Gilbert v. Reynolds, 51 Ill. 315, no notice had been served and no appearance entered. In Brigham, Petitioner, 176 Mass. 223, 57 N. E. 328, the charge was that evidence in the divorce proceeding had been suppressed by fraud and collusion. "The jurisdiction was undoubted and complete." In Nicholson v. Nicholson, 113 Ind. 131, 15 N. E. 223, both parties were residents of the proper state. The fraud consisted of inducing the noninterposition of a defense. Promise to dismiss was broken. And see Lorimer v. Knoyle, 43 Kan. 338; Johnson v. Sharpe (Tex. Civ. App.) 34 S. W. 1006 (where the answer was filed by an attorney without the authority of defendant, then a nonresident); Arthur v.

Israel, 15 Colo. 147, 25 Pac. 81, 10 L. R. A. 693, 22 Am. St. 381 (where the wife, after learning of the decree, married another man); Mohler v. Shank's Estate, 93 Iowa, 273, 61 N. W. 981, 34 L. R. A. 161, 57 Am. St. 274 (where the same feature appeared); Hurley v. Hurley, 117 Iowa, 621, 91 N. W. 895; Sloan v. Sloan, 102 Ill. 581 (an unauthorized action). In Caswell v. Caswell, 120 Ill. 377, 11 N. E. 342, the husband resided in that state, and brought suit in the courts of that state, but not in the right county. This case is the only one cited by defendant which tends to support his contention.

Plaintiff insists that the divorce was an absolute "nullity, a mere brutum fulmen," of no force whatever, and incapable of having any legal effect given to it. Both principle and authority are strongly persuasive of the soundness of that proposition. But if a defendant in such irregular divorce had married, had had offspring, and had died after the death of the plaintiff, would a court bastardize the innocent children? Or if after the decree the defendant had attempted successfully or unsuccessfully to kill the plaintiff, and then died after his decease, would she transmit a right to his estate? The question whether, under any possible circumstances of extreme aggravation, the subsequent conduct of the defendant in the divorce proceedings could validate the improper decree, or operate as an estoppel against one claiming a distributive share of the estate of plaintiff therein, it is not necessary to here decide. For, assuming that there might be such circumstances, the record now before us certainly does not disclose them.

In this case Higbie himself was guilty of deliberate fraud upon his wife and upon the court. The trial court found, and was justified in finding, that neither husband nor wife had at any time been a resident of or domiciled in the territory of Dakota or in the state of South Dakota, and that Mr. Higbie never had any bona fide intention of removing thereto, but went there temporarily for the sole purpose of instituting the divorce action. This was not "a mere irregularity." A deliberate perjury as to a prerequisite to jurisdiction was involved. Mr. Higbie could not have come into equity with clean hands. Those claiming under him are in no better position.

Nor was the alleged misconduct of Mrs. Higbie by any justifiable reasoning sufficient to have confirmed the decree, or to have estopped her or persons through her from claiming a distributive share of the husband's estate. She had never married again. She had stopped the first divorce in Dakota. She had appeared in the second proceeding in Nebraska. Knowing that her husband lived and continued to live in Minnesota, she was not bound to follow him into any other jurisdiction, remote or near, in which he might attempt to perpetrate an outrage on the courts and fraud on her. Her mere inaction until the time of actual knowledge of the existence of the decree is immaterial and insignificant. What she did afterwards did not validate the divorce. The unvarnished substance of her alleged misconduct is that she defaulted in the performance of her conjugal duties, that she contributed none of the aid of a wife to build up this estate, that she slept on her rights, and that according to the verbal testimony of a real estate agent, whose remembrance was indefinite, she once wrote a letter, which was not produced, wherein she claimed to have been divorced from her husband and to own certain property as a feme sole. Defendant's conclusion is that "the time-honored equitable trio, conscience, good faith and reasonable diligence," were wanting in her conduct. If there were no other considerations presented in this case, it is clear that the divorce was not validated by her conduct.

It appears, however, that Mr. Higbie's words and actions to his wife were brutal, and justified her in living apart from him, and that she notified persons engaged in buying land from Mr. Higbie that she was still his wife. She was not shown to have signed any deed as a single woman. The trial court, indeed, found that she never, at any time after such pretended divorce, acquiesced therein, or held herself out as a single woman, but until the death of her husband at all times claimed to be his wife. She always insisted that the Dakota divorce was a fraud. It necessarily follows that the judgment of the trial court must be and is hereby sustained.

In this view of the case it would be a work of supererogation to consider the merits of defendant's further contention that judgment previously rendered in the probate court operated as an estoppel.

Affirmed.

On July 2, 1909, the following opinion was filed:

JAGGARD, J.

Defendants' motion for reargument proceeds on the express assumption that the original opinion herein was based on two points not presented nor argued. In point of fact, that decision rests on two simple and unmistakable propositions, elaborately argued orally and on briefs, on which the decision of the trial court rests, viz.: First, that the invalid Dakota divorce decree was subject to collateral attack; second, that the wife's conduct subsequent to the decree did not operate to validate it. The opinion did set forth that a group of authorities in defendants' brief sustained, not the proposition for which they were cited, but another which was there formulated, namely, that the conduct of a spouse, including laches, subsequent to the granting of a divorce decree invalidated by fraud in the service of summons or in the course of the trial, may estop representatives of such persons from claiming a distributive share in his estate. Defendants insist, however, that the cases to which reference will be immediately made sustain the position that delay for a sufficient period to attack a decree of divorce void because neither of the parties were residents of the jurisdiction rendering the decree may by estoppel prevent any question as to its validity.

We did not refer in the original opinion to In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. 514, because it does not purport at all to be of the class of cases to which the instant controversy belongs. There the divorce was obtained by collusion to confer jurisdiction. The divorced husband died. The parties to the controversy concerning his estate were his divorced wife, who alleged the invalidity of the decree, a woman whom he had married after the divorce, who asserted its validity, and a sister and a brother, claiming under the will. The trial court found for the second wife. This was affirmed. In the case at bar neither of the parties had married again. The intervening rights of third parties were not involved. Defendants themselves called our attention to the principle that the courts, in motions to vacate judgments, proceed with great caution and anxious care of the intervening rights of strangers. Black, Judg. § 320. Moreover, at page 410 of 55

Minn., page 1058 of 56 N. W. (23 L. R. A. 287, 43 Am. St. 514), Gilfillan, C. J., says:

"When, as between whom, and to what extent is such determination [of residence of the parties] binding in the state in which the parties are in fact residents?   *   *   *   First, in proceedings between the state of the parties' actual residence and one of the parties; second, in proceedings between the parties in the state of their actual residence, where the divorce in the other state was procured on the application of one of them, the other not appearing in the action to procure it; third, in proceedings between the parties when both voluntarily appeared in the action in which the divorce was granted, and consented to the jurisdiction, or that the court might determine the facts on which the jurisdiction depended. In the second class of cases it was settled that a judgment of another state can be assailed on the ground of want of jurisdiction in the court to render it; the decisions have been practically uniform that the party who did not submit to the jurisdiction is not bound by the judgment." The decision tends to sustain our original conclusion.

In Hurley v. Hurley, 117 Iowa, 621, 91 N. W. 895, it did not appear and was not found that the husband was a nonresident when he obtained a divorce. Moreover, the rights of third persons had intervened. In McNeil v. McNeil (C. C.) 78 Fed. 834, the opinion was oral and rested on the proposition that, "McNeil not having been a resident of the state for a year when he brought his suit for divorce, the court had no jurisdiction. This, however, is not apparent on the record; and hence the judgment cannot be said to be void on its face, and therefore subject to attack at any time." This rule, as has appeared in the original opinion, is distinctly not the law, either in the federal courts or in this court.

For the first time our attention is now called to Reed v. Reed, 52 Mich. 117, 17 N. W. 720, 50 Am. 247. It fails, for a number of reasons, to support defendants' contention. It suffices for the present to point out that the law in Michigan accords with the opinion previously expressed in the original opinion. In O'Dell v. Goff, 153 Mich. 643, 117 N. W. 59, the testator had obtained a divorce in Indiana from contestant's mother. The undisputed evidence in the case proved that at this time the testator resided in Michigan.

The judgment was held to be void ab initio, and that defendant in the proceedings to obtain it had a right to disregard proceedings therein of which she had notice. Carpenter, J., said: "The controversy was being tried by a court which possessed no jurisdiction, and she was pursuing a course which she had a lawful right to pursue by paying no attention to the steps that were therein taken."

Former opinion adhered to.

BROWN, J. (dissenting).

I dissent. A careful consideration of the merits of this case, after reargument, leads me to the conclusion that a reversal should be ordered. The opinion of the court states all the facts, and the reasons for my conclusions are, in brief, as follows:

The judgment of divorce, though void in fact, was valid on its face, and a certified copy thereof was personally served on Mrs. Higbie many years before her death, yet she took no proceedings to have it set aside, and to this extent at least she acquiesced therein. If both parties had voluntarily appeared before the Dakota court in which the action for divorce was brought and submitted to its jurisdiction, they would have been bound by the judgment, although the court, by reason of the fact that both were nonresidents, had no jurisdiction of the subject-matter of the action, the marital relations between them. In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. 514. If in such a case the parties conclude themselves by their personal appearance, it is a little difficult to see why a long-continued acquiescence by one of them, with full knowledge of a judgment obtained by a court of a state having no jurisdiction of the subject-matter, but valid on its face, would not be equally effective against him. Reed v. Reed, 52 Mich. 117, 17 N. W. 720, 50 Am. 247; McNeil v. McNeil (C. C.) 78 Fed. 834; Earle v. Earle, 91 Ind. 27.

In this particular case, the parties had resided apart for a long number of years; Higbie in Minnesota, and Mrs. Higbie in New Jersey. The divorce judgment was entered by the Dakota court in 1889, and the wife, though immediately served with notice thereof, permitted it to remain unchallenged, and never in any proceeding did she question its validity before her death in 1906, a period of

sixteen years. Higbie died in 1905. Under such circumstances it would seem at least equitable and just that the rights of the heirs, the only persons now before the court, should be tested in the light of and guided by the status of the relations of the Higbies as fixed and settled by the judgment for divorce, valid on its face, which they voluntarily chose to abide by and acquiesce in for sixteen years prior and up to the time of their death, namely, not husband and wife. And this the Ellis case sustains.

I am authorized to say that Chief Justice START concurs in this view of the case.