## ELIZABETH L. McELRATH v. A. McELRATH and Others.[1]

January 31, 1913.

Nos. 17,843—(169).

**Service of summons — finding.**

A return on a summons in a divorce suit showed valid service. A finding that the person who made the return handed a copy of the summons and complaint, inclosed in a sealed and unaddressed envelope, to the defendant, stating that he had been directed by defendant's husband to give the same to her, coupled with a finding that on the same day the defendant ascertained the contents of the summons and complaint, does not show a defective service.

**Complaint sufficient after entry of judgment.**

Within the rule that when a complaint, after entry of judgment, is attacked for failure to state a cause of action, every reasonable inference must be indulged in to sustain the pleading, the complaint involved in this action is *held* to have stated a good cause of action for divorce on the ground of wilful desertion.

**Vacating decree of divorce — state uninterested after death of one party.**

In an action to vacate a decree of divorce on the ground that it was obtained by fraud and perjury of the prevailing party, brought after the death of the party guilty of the fraud, the state is no longer a party interested, and the action becomes one involving mere property rights, governed by the ordinary equitable principles.

**Statute inapplicable.**

In such an action, where the fraud and perjury charged against the prevailing party does not involve the jurisdiction of the court, nor any fraud or deception by which the opposing party was misled or prevented from

[1] Reported in 139 N. W. 708.

Note.—On the question of attack upon divorce decree after death of one or both of the parties, see note in 57 L.R.A. 583.

As to the right of party obtaining or consenting to divorce to contest its validity, see note in 60 L.R.A. 294.

As to impeaching decree of divorce rendered in other state on the ground of nonresidence or domicil of person in whose favor it was granted, see note in 23 L.R.A. (N S.) 1254.

making a defense, but relates solely to perjury and concealment in establishing the cause of action alleged, it does not come within the purview of section 4277, R. L. 1905.

**Laches.**

A defendant, upon whom the summons and complaint in a divorce suit was personally served, delayed for 14 years after such service, and more than 9 years after knowledge that a decree had been entered, to apply to the court to have it vacated, but waited till after the death of the plaintiff therein. *Held*, that her long delay was not excused, either by her ill health or the alleged ignorance of the fraud and perjury practiced by the prevailing party.

Action in the district court for Meeker county by the guardian ad litem of plaintiff against the executor of the last will of W. C. McElrath, deceased, and the legatees named in that will, to vacate a judgment of that court rendered in December, 1897, dissolving the marriage contract between plaintiff and said W. C. McElrath. The facts are stated in the opinion. The case was tried before Qvale, J., who made findings, denied plaintiff any relief and ordered judgment dismissing the action. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*H. S. McMonagle* and *Albert F. Foster*, for appellant.

*E. P. Peterson, Jesse Van Valkenburg, Sam G. Anderson, Jr.,* and *C. P. Carpenter*, for respondents.

HOLT, J.

This is an appeal from a judgment dismissing an action brought by plaintiff to vacate and cancel a decree entered December 14, 1897, in the district court of Meeker county, dissolving the marriage relation theretofore existing between plaintiff and her husband, on the ground that the court was without jurisdiction to render the decree and that it was procured through the wilful perjury and deception of the husband. From the pleadings and findings the following facts appear:

In 1887 plaintiff and W. C. McElrath were married in Meeker county, Minnesota, and lived on a farm together until April, 1891,

when plaintiff became ill and temporarily insane. She was first taken to her parents' home, distant one mile from that of her husband, in order to obtain needed care. In a few days she was sent to the insane asylum, but allowed to return to her parents after a three months' stay. She was formally discharged from the asylum in November, 1891. Thereafter she became subject to recurrent epileptic fits until January, 1895, which affected her mind to a marked degree, so that "from April, 1891 until now, she has been afflicted with confusional and transitory insanity with recurring periods of lucidity which have become more and more frequent and of longer duration, but owing to her weakened physical and mental condition she has been unable, during all the time, to be away from home and the immediate neighborhood without an attendant and she has shown a decided though intermittent tendency to mental alienation." Her removal to her parents' home, commitment to the asylum, and return to her parents were with the approval of her husband. During the first two or three years after her return from the insane hospital he frequently visited and cohabited with her at her parents' home. Thereafter his visits ceased, and in August, 1897, he instituted an action for divorce in the district court of Meeker county against her on the ground of wilful desertion. A copy of the summons and complaint were delivered to her, but she defaulted, and in December of the same year he obtained a decree dissolving the marriage. There were no children. At least as early as July, 1901, she knew that the decree had been entered. The parties continued to live within one mile of each other until January 15, 1911, when W. C. McElrath died testate.

A few months thereafter this action was brought against the legatees named in the will of McElrath to set aside the divorce decree. The court found "that the said decree of divorce was by the said McElrath obtained by and through, deceit, perjury and corruption, and by gross fraud practiced by him upon the court," but granted no relief to plaintiff.

Plaintiff contends that on the findings she is entitled to relief, first, on the ground that the divorce decree is and always was a

nullity for want of jurisdiction, in that the summons was not served on her, and, even if it were, the complaint stated no cause of action; second, that the decree having been obtained by perjury and gross fraud on the court, it ought to be brushed aside without regard to time or consequences.

The return made by the party who served the summons in the divorce suit shows on its face legal service. The court finds as to the service that it was made by the person who made the return handing to the defendant therein, this plaintiff, at her parents' home, a copy of the summons and complaint, inclosed in a plain, sealed, and unaddressed envelope, and stating that her husband had requested him to hand the same to her. Although she immediately gave the envelope to her mother without opening it, it is found that she acquainted herself with the contents of the papers, and on the day the papers were so served upon her wrote to her husband, denying that she had deserted him, and in substance stating that the charge of desertion made by him in his complaint was wholly false and untrue. We entertain no doubt of the legal sufficiency of the service.

The complaint, after stating the residence of the plaintiff in the suit, the age of the parties, their marriage, and that there was no issue, alleged:

"That some time in the month of April, 1891, the said defendant then and there wilfully abandoned and deserted her said husband, this plaintiff, wilfully abandoning and deserting the home he had provided for her, against his wishes and without his consent, and contrary to his express desires; that said defendant has never since that time returned to this plaintiff, but has ever since continued to reside apart from him; that soon thereafter said defendant removed or caused to be removed from the home of this plaintiff all of her personal effects and belongings."

The complaint is not a model pleading, but an attack now, 14 years after judgment, comes too late if a cause of action can reasonably be spelled out of the allegations. Smith v. Dennett, 15 Minn.

59 (81) Solomon v. Vinson, 31 Minn. 205, 17 N. W. 340; Trebby v. Simmons, 38 Minn. 508, 38 N. W. 693; Slater v. Olson, 83 Minn. 35, 85 N. W. 825; Peach v. Reed, 87 Minn. 375, 92 N. W. 229; Kubesh v. Hanson, 93 Minn. 259, 101 N. W. 73. In the last case, an action to set aside a judgment obtained by default in justice court on the grounds that there was no service of summons and that the complaint did not state a cause of action, this court, speaking through Chief Justice Start, says:

"A judgment is never void for error, if the court has jurisdiction over the person of the defendant and the subject-matter of the action. Therefore defects in the pleadings in a civil action—for example, the failure of the complaint to state facts constituting a cause of action—do not render a judgment void. It is valid unless reversed or set aside on appeal or by some other appropriate proceeding in the action. An independent action in equity to set aside a judgment cannot be resorted to as a substitute for a demurrer to a defective pleading. 1 Freeman on Judgments, § 135; 17 Am. & Eng. Enc. (2d ed.) 1069."

It must be admitted that in this divorce suit the wilful desertion of the defendant in April, 1891, was alleged with legal accuracy. The contention is that the subsequent allegations do not show that the wilful desertion continued up to the commencement of the suit, and that, conceding that the leaving her husband's home was a wilful intention to desert, the desertion could immediately be terminated by the parties, as in fact was done, for by mutual consent the wife was to remain with her parents to receive needed care. But we are of opinion that it is fairly inferable from the allegations that the pleader intended to charge a continuous wilful desertion from April, 1891, up to the institution of the suit.

Plaintiff also contends that the findings bring her within the provision of R. L. 1905, § 4277. As that section has been construed, it does not apply to the fraud and perjury whereby the issues tendered by the pleadings are established at the trial. Hass v. Billings, 42 Minn. 63, 43 N. W. 797; Colby v. Colby, 59 Minn. 432,

61 N. W. 460, 50 Am. St. 420; Id. 64 Minn. 549, 67 N. W. 663; Bisseberg v. Ree, 99 Minn. 481, 109 N. W. 1115; Hayward v. Larrabee, 106 Minn. 210, 118 N. W. 795, 130 Am. St. 606; Major v. Leonard, 115 Minn. 439, 132 N. W. 915. It is quite clear that no perjury occurred, except at the trial, and that was in establishing the issue pleaded. No fraud was attempted by the husband, by way of misleading the wife or inducing her to refrain from defending. We do not think that the mere fact of knowingly beginning an unfounded action is such a fraud upon the court that a judgment rendered therein must be set aside under the statute quoted as one obtained by means of "any fraudulent act, practice, or representation of the prevailing party." However, even if it be admitted that the facts found bring the case within the section cited, it is governed nevertheless by equitable principles, and the right to have a judgment vacated because of the fraudulent practices of the prevailing party is not an absolute one. Geisberg v. O'Laughlin, 88 Minn. 431, 93 N. W. 310.

But it is urged that in vindication of its own honor and integrity the court must purge its records of judgments and decrees obtained through practices such as herein found, no matter at what time it is apprised thereof, and it is said this is especially true in divorce suits, wherein the state is so vitally interested. It is often said that in every divorce action the state is the third party, whose rights the court must zealously protect. The welfare of the nation depends in a great measure on the stability and permanency of the marriage relation. We also grant that upon an application to vacate a decree of divorce, because wrongfully obtained, where such vacation results in reinstating the marriage, the court should be equally solicitous in promoting the interest of the state. But where the court is not invited to act until the marriage in question is irrevocably dissolved by a power beyond the control of any court of justice, we have a different situation. Such is the present case—a mere property controversy, based on the existence or nonexistence of a valid divorce decree. Therefore the equitable principles which ordinarily rule property rights should be applied.

True, there is much in plaintiff's case which strongly inclines a

120 M.—25.

court in her favor. Her long-continued mental and physical illness,. aggravated by the apparent heartless conduct of the husband in abandoning her when an affliction came upon her which called for his most considerate care and tenderest attention, would incline a court to go to the limit in granting relief. But there is also another side which cannot be overlooked. The husband was dead before this attack was made upon him. He had no opportunity to deny or explain what is now laid at his door. Plaintiff and her parents lived for 14 years within a mile of his home, and all the time knew that he had brought the suit, and for at least 10 years knew that he had obtained a decree. Apparently both she and her parents were satisfied to have the decree stand as valid. There was no desire on plaintiff's part to again assume marital relations with W. C. McElrath. She let the decree serve as a protection to her heirs, if she should die first owning property. When, however, he happened to die first, then at once she wants the decree set aside, so as to inherit all property left by him.

Although the finding is that it does not appear that plaintiff ever ascertained the exact perjured testimony by means of which the decree was obtained, or to what extent the true situation was concealed from the court who tried the divorce suit, still we may not shut our eyes to the fact that plaintiff and her parents knew and appreciated that the allegations in the complaint were false, and that necessarily perjury and deception would have to be used in order to obtain a divorce.

We have found no case holding that a spouse, with knowledge that the other, through fraud or perjury, not going to the jurisdiction of the court, has obtained a decree of divorce, may sit idly by for years, until the death of the one guilty of fraud, and then successfully invoke the equity powers of the court to secure property rights. When the spouse wronged by the decree, or any one claiming under such an one, comes into court asking relief, so that property may be reached, it must be done within a reasonable time after knowledge of the fraud, or of facts from which a person of ordinary prudence would proceed to ascertain the true state of affairs. The application in Olmstead v. Olmstead, 41 Minn. 297, 43 N. W. 67, was

seasonably made, so in Colby v. Colby, 59 Minn. 432, 61 N. W. 460, 50 Am. St. 420, and 64 Minn. 549, 67 N. W. 663. The same rule we gather from the cases cited in the extensive notes to Lawrence v. Nelson in 57 L.R.A. 583.

In Sammons v. Pike, 108 Minn. 291, 120 N. W. 540, 122 N. W. 168, 23 L.R.A.(N.S.) 1254, 133 Am. St. 425, the majority opinion concedes the law to be in effect that, where a decree of divorce is voidable because of fraud, the victim of the fraud, may, by unexplained delay lasting until after the death of the perpetrator of the fraud, or by other conduct operating by way of waiver or estoppel, be prevented from asserting a right to the distributive share of the property left by the wrongdoer, but holds that, where a decree is rendered by a court without jurisdiction, it is a nullity, and may be attacked either collaterally or directly at any time. It is, however, to be noted that the present Chief Justice dissented, in which dissent Chief Justice Start joined, being of the opinion that long acquiescence by a party to a divorce decree valid on its face, though void in fact, would prevent the assertion of property rights based on the existence of the marriage relation after the rendition of the decree.

The case of Zoellner v. Zoellner, 46 Mich. 511, 9 N. W. 831, is quoted with approval in the majority opinion in Sammons v. Pike, supra, where nine years' unexcused delay was held fatal to the right to vacate a divorce decree. In Evans v. Woodsworth, 213 Ill. 404, 72 N. E. 1082, a delay of less than $2\frac{1}{2}$ years after knowledge of the divorce was held a bar to the right to have a decree vacated for fraud. So in Nicholson v. Nicholson, 113 Ind. 131, 15 N. E. 223, where the proceeding to vacate was instituted during the life of both, the court held that a lapse of 4 years after the plaintiff had been fully informed of the alleged fraudulent decree showed laches which prevented redress. The court says: "A court that has been imposed on by a party, who has obtained its decree in his favor by fraud and imposition, will not be slow to vindicate the administration of justice by setting aside a decree so obtained, provided the injured party is diligent in invoking its aid in that behalf." Earle v. Earle, 91 Ind. 27.

In the divorce suit here in question the court acquired jurisdiction

of the parties, and had undoubted jurisdiction of the subject-matter of the suit, the marriage status of the parties. It is clear that the decree cannot be collaterally attacked. It cannot be treated as a nullity. At most it is voidable. We have found no authority for the proposition that one who was personally served with summons in a divorce case, one who then knew that the ground alleged for divorce was false, and must have known that a decree could not be obtained, except by concealment and perjury, can after the lapse of 14 years ask the court to vacate the same, and this in view of the fact that for more than 9 years after knowledge of its existence she made no effort to have it vacated, nor in any manner claimed the rights of a wife against her former husband until after his death. During all this time both lived in the immediate vicinity of each other. No disposition has ever been evinced by either plaintiff or her parents to protect the marriage relation of plaintiff with W. C. McElrath while he lived, and while the state also was interested in that relation, and it seems too late now, after the lapse of these many years, to invoke the aid of a court of equity in order to obtain the property which for 14 years the plaintiff permitted her former husband to consider and treat as forever freed from any claim which might be asserted thereto by or through her. Her state of mind, unfortunate as it is as shown by the findings, cannot excuse this long delay. We think the learned trial court directed the proper judgment.

Judgment affirmed.